Totten. J.,
delivered the opinion of the court.
The action is in ejectment in the circuit court of Lincoln, for seventy acres of land. On the trial, after the plaintiff’s lessor had rested her case on the proof submitted, the defendants read in evidence a deed, dated 15th March, 1830, from Wilson Scott and said Athenia, then his wife, to John Smith, for the land in question, under which deed defendants claimed title. Wilson Scott died in February, 1847, and said Athenia instituted this action in October, 1849.
The ground assumed by plaintiff in avoidance of her deed, is that at the time she executed it, she was under the disability cf both infancy and coverture, and that in a- reasonable time *469 after the removal of these disabilities, she disaffirmed the title conveyed by the deed, by bringing her action for the land.
One of the issues discussed in the evidence was, whether the plaintiff was a minor at the time she. executed the deed; and another issue of fact was, supposing her to have been a minor when the deed was made, whether she affirmed it after the removal of her disability, or under the circumstances of the case, waived her right to disaffirm it, by omitting to do so in a reasonable time.
In regard to this latter issue, we may observe that there is proof in the record tending to show that, in consideration of the seventy acre tract, Wilspn Scott received another tract of 1'orty-seven acres of equal value, situated some four or five miles from the other tract, and to which he and his wife removed shortly after their marriage. Wilson Scott, by his will, directed his executor to sell this forty-seven acres, to raise a fund for the payment of his debts, and gave to his wife, said plaintiff, the balance of his real and personal estate. The executor sold the forty seven acres for five hundred dollars, and states, that of the proceeds he paid two notes of $100 each, given by the testator for a forty acre tract of land, bought of another person; that the proceeds of the forty-seven acres lacked some $30 of paying the debts of the estate, which sum the plaintiff advanced,, and he left her in possession of the forty acre tract and of the personal property of the estate; that testator had also bought another place on which his widow is now residing with her mother.
Matthew Rayborn proved, that plaintiff admitted to him, after the suit was instituted, that she had received value for the land. There are small improvements on the land in question, and it was purchased by defendants, as commissioners, as a place for the poor-house. Wilson Smith states, that his father, as keeper of the poor-house, went on the land in 1840 or 1841, ánd remained some years ; crops were made on it in *470 1849 find 1850. The plaintiff resided in the same neighborhood, and was in the habit of visiting a relation who resided near the land. No objection seems to have been made to the deed until the institution of the suit, that being the first and only act of disaffirmance. These are the facts and circumstances detailed in the record, which need not be recited, as the issues of fact were very fairly left to the jury.
The court instructed the jury, in substance and effect, as follows : That the deed of a minor for his land is not void, but only voidable, and that he may elect after coming of age, either to affirm or disaffirm it. The court further said to the jury that, if you believe from the evidence, that when the plaintiff made the deed she was a minor, but that after she came of age she affirmed it, then the deed would be valid as if she had been of age when she made it; but on the contrary, if she did not affirm the deed, but in a reasonable time after coming of age disaffirmed it, by bringing an action for the recovery of the land, that would amount to an avoidance of the deed. That there are three modes of affirming the voidable acts of an infant after he come of age; first, by express ratification; second, by doing acts which reasonably imply an affirmation; and, third, by omitting to disaffirm the deed in a reasonable time after the party comes of age. That a ratification of the deed in question, after the plaintiff came of age, would be of no validity, unless she were fully aware of her rights, and that it was in her power to disaffirm it. The court said, in other words, “that, to make the deed good by such ratification, the party must not only have agreed to it after she came of age, but at the time she so agreed to it, must have known that she had the right to disaffirm it, if she saw fit to do so.” “ That ratification means to confirm an act not before binding, making it good, agreeing to, or adopting it.” That if the plaintiff, at the time she made the. deed, was both an infant and feme coverl, that no agreement or adoption on *471 her part, daring her coverture, would amount to a ratification. That the jury must determine from the proof, whether the plaintiff has made the deed valid by an express ratification, or whether the same may be inferred from circumstances' proved in the case. That the law gave her a reasonable time after coming of age, to elect whether she would affirm or dis-affirm the deed; and that it was incumbent on her to make her election in a reasonable time, and what is reasonable time is for the jury to determine from all the circumstances of the case. That if the plaintiff was both feme covert and an infant, when she made the deed, and the coverture continued beyond her infancy, in that case, in determining whether the deed was disaffirmed in a reasonable time, the jury should not take into the estimate, the period during the coverture; and that if she did not disaffirm the deed in a reasonable time, it would be binding upon her. Such in effect was the charge of the court on the points alluded to.
Assuming that the plaintiff was under the disability of both infancy and coverture, at the execution of the deed of 15th March, 1830, what then was the effect of the deed?
These disabilities are to be separately considered, as the one can derive no aid from the other, or have any effect upon the other. As to the disability of infancy, it may now be considered as the settled rule of this court, that in general, the deed of an infant for land, is not void, but voidable only, at his election. In Wheaton vs. East, 5 Yer. R. 60, the subject was reviewed and the rule distinctly stated. In McGan vs. Marshall, 7 Hump. R. 125, the former case was referred to, and its doctrine fully recognized by the court. Zonch vs. Parsons, 3 Burr. 1794. Keane vs. Boycott, 2 H. Black. 511. In Roof vs. Stafford, 7 Cowen 179, it was considered a well settled doctrine, that the contracts of an infant, not only such as take effect by his actual delivery of the subject matter, as a feoffment with livery, ora sale and manual delivery of goods, *472 but all his deeds, whether at the common law or under the statute of uses, or whether relating to real or personal property, are voidable merely and not void; same case in 9 Cow-en 62G.
To the same effect is Boot vs. Mix, 17 Wend. R. 139, where it is said, that the rule seems to be universal, that all deeds or instruments under seal, executed by an infant, are voidable only, with the single exception of those, that delegate a naked authority, which are void.
The deed then, was not void on account of the disability of infancy. Was it so on account of that of coverture?
At the common law, a conveyance by a feme covert, except by some matter of record, was absolutely void; and the only mode by which she could convey title to her real estate, were by fine and common recovery. A different and more convenient rule has been adopted by statute, in most, if not all, the States of the Union; and that is, by the joint deed of the husband and wife, and the private examination of the wife, as required by the statute authorizing this mode of conveyance. Such, as is well known, are the settled law and usage of our own State. The deed of a feme covert so made, will have the same force and effect to pass her title to real estate, so far as it can be affected by her disability, as if she were a feme sole. In Bool vs. Mix, 17 Wend. R. 129, the court say, that their “act of 1771, assumed that femes covert might alien by deed, and it prescribed the manner in which their acknowledgments should be taken for the future. There can be no doubt, but that the deed of the plaintiff, having been duly acknowledged, was effectual to convey her interest, as though she had been a feme sole. Having complied with the requisitions of the statute, the disability resulting from coverture, was completely obviated. There was no incapacity to alien her lands, in that form.”
In the present case, the deed was executed and acknow- *473 ]edged, in the manner required by our statutes, and therefore, the effect of the disability of coverture, was completely obviated and removed.
We conclude, then, that the deed was not void, but that it was effectual to pass to and vest in the vendee, a title in fee to the land, according to the terms and purport of the deed ; subject, however, to be avoided at the election of the infant, after the removal of her disability.
In the present case, the disability would continue after she came of age and during the coverture; for it is not to be presumed, that she was free or capable to exercise her right of election, whilst in a state of coverture; but after the removal of that disability, it was then in her power, either to avoid or affirm the deed, not because of her coverture, that objection having been obviated as we have seen, but because of her infancy when the deed was executed.
Now, what acts will avoid the deed of an infant? Mr. Kent says, “the deeds, writings and parol contracts of an infant, may be avoided during infancy, or after he is of age, by his dissent, entry, suit or plea, as the case may require.”
The better opinion seems to be, that a sale of chattels by an infant, may be avoided during infancy, but that a sale of lands cannot be avoided by him, till he come of age. The act of avoidance in relation to his personalty, is allowed him during infancy, as it may be the more necessary to his personal interest, but is not allowed him as to his realty, because of his supposed indiscretion to exercise it, and as its exercise during infancy may not be so material to his interest. Zouch vs. Parsons, 3 Burr, 1794; Roof vs. Stafford, 9 Cowen, 626; Bool vs. Mix, 17 Wend., 119.
The deed of an infant may be avoided after he come of age, by executing a deed to a third person for the same land, that being an act of like character and notoriety with the first; or by making an entry upon the land, reclaiming it and declaring *474 his dissent to his deed; or, as we apprehend, by suit for the land, without having made any previous entry. Jackson vs. Carpenter, 11 J. R., 540; Tucker vs. Moreland, 10 Peters’ R., 73; Hoyle vs. Stowe, 2 Dev. & Battle, 220; Kent’s Com. Lec. 31.
In Bool vs. Mix, 17 Wend. R., 135, it was held, that where an infant’s vendee was in possession of the land, an entry upon the land in avoidance of the sale, was first necessary, before an action could be brought for the recovery of the possession, Where the conveyance had been by feoffment with livery, there would seem to be some reason for such a rule, requiring the vendor to avoid the sale and investiture, by an act of like character and solemnity with that which attended the sale; but we do not see that the same reason can apply to our statutory deed, or to a deed operating under the statute of uses.
In the next place, what will “ amount to an affirmance of the voidable deed? The court instructed the jury, that this might be by an express ratification, or by acts which reasonably imply an affirmance, or by an omission to disaffirm the deed in a reasonable time, tie is fully sustained in this view of the subject by the cases of Kline vs. Beebee, 6 Conn. R., 494; Richardson vs. Boright, 9 Vermont R., 365; Hart vs. Underhill, 9 N. H. R., 439; see, also, 2 Kent’s Com. 239, and note.
Mr. Kent says, in the note referred to, that to give validity to a voidable contract by the ratification of the party, the party must be fully apprised of his rights, and do the act deliberately and upon examination.
Again, he says in the text, the confirmation of the act or deed of an infant, may be justly inferred against him, after he has been of age for a reasonable time, either from his positive acts in favor of the contract, or from his tacit assent under circumstances not to excuse his silence.
“ In the case of voidable contracts, it will depend upon circumstances, such as the nature of the contract, and the sitúa *475 tion of the infant, whether any overt act of assent or dissent on his part be requisite, to determine the fact of his future responsibility.” 2 Kent’s Com., 239.
In Wheaton vs. East, 5 Yerg. R., 62, Green, J., in delivering the opinion of the court, observes that “ a deed cannot be ne-c ess ary to confirm that which was executed during infancy, because that deed passed the interest in the estate, and being only voidable at the election of the infant, should he or his heirs fail to disaffirm it, a good title will be vested, and no other person can call it in question on account of the infancy of the grantor at the time it was executed. Anything, therefore, from which his assent, after he arrives at age, may be fairly inferred, will be sufficient to affirm the deed made during infancy, and prevent him from afterwards electing to disaffirm it.”
In Bayless vs. Denby, 3 M. & Selw., 482, Lord Ellenborough was of opinion, that an act of as high solemnity as the original act was necessary to a confirmation. This doctrine, however, is repudiated in Tucker vs. Moreland, 10 Peters, 75, where it is admitted in conformity to many other cases, that acts in pais may amount to the confirmation of a deed. But the court was also of opinion, that those acts should be of such a solemn and unequivocal nature as to establish a clear intention to confirm the deed after a full knowledge that it was voidable; and a fortiori, a mere acquiescence, uncoupled with any acts demonstrative of any intent to confirm it, would be insufficient for that purpose. In Jackson vs. Carpenter, 11 Johns. R., 543, mere acquiesence was likewise held insufficient to confirm a sale, in that case of vacant and uncultivated land, though it had been for eleven years. On the contrary, Mr. Kent, in view oí the authorities, says that if any act of confirmation be requisite, after the infant comes of age, to give binding force to a voidable act of his infancy, slight acts and circumstances will be a ground from which to infer the assent; but *476 the books appear to leave the question in some obscurity, when and to what extent a positive act of confirmation on the part of the infant is requisite. 2 Kent’s Com., 239.
In view of conflicting- authorities on this subject, we can only deduce such conclusions from them as we may think most reliable, and in accordance with general principles.
If the vendee rely upon an express ratification of a voidable contract, it must appear that the act of confirmation was direct and deliberate, and done with a full knowledge that it was to have that effect.
If the vendee rely upon an implied confirmation of the voidable contract, it must appear from facts and circumstances tending to prove a recognition of the contract, and inconsistent with the idea of any intention to avoid it, as illustrated in the case of Wheaton vs. East, 5 Yerg. R., 62. In that case, a full price was paid to the infant when the deed was executed. After he came of age, he was aware that the vendee was making valuable improvements on the land; he said on several occasions, though not to the vendee, that he had been paid for the land, and was satisfied; he authorised a proposition to be made to the vendee for its purchase; and failed to do any act of disaffirmance for about two years.
This was certainly a strong case of implied confirmation; and, doubtless, many other acts of less force and directness would have the same effect. And, finally, the voidable contract of the infant is confirmed, if he do no other act, but fail and omit to disaffirm it in a reasonable time. What is reasonable time is a question of fact, and it must necessarily depend upon the facts and circumstances of each particular case.
We see nothing unjust or inconvenient in the rule which requires the party within a reasonable time after he arrive at full age, to make , his election whether he will stand to and abide by his voidable contract made during infancy. On the contrary, it would be highly unjust and inconvenient to the *477 other party, who is bound by the contract and has no right to avoid it, to be held subject for an indefinite period to this right of election. Having attained his full age and discretion, why should he not be required to act upon his rights with reasonable diligence, and to make' his election ? And if he do not, why should it not be taken by analogy to other cases, as by a waiver of his right to elect, or as an election itself, to abide the contract? We do not concur in the doctrine of some of the cases before alluded to, that the mere acquiescence of the party for an indefinite time, without any positive and direct act of confirmation, will not be considered as either an election or a waiver of his right to elect. If he do not exercise his right in a reasonable time, we think it should be held as a confirmation of the contract, or in other words, as a waiver of his right to avoid it.
As to the time within which the party may exercise this right of election, no uniform rule could be established without prejudice to the right itself. What should be considered as very reasonable and proper time in one case, might well be considered as unreasonable and unnecessary in another, owing to a difference in the condition and situation of the parties, in reference to the right to be affected by their action.
It will be seen, that in the course of this discussion, we have reviewed the several points and questions made in the instructions of the court to the jury, and that these instructions conform substantially to the view we have taken of the subject. We think, therefore, that in the instructions given by the court to the jury, there is no error.
Now, as to the verdict upon the facts submitted to the jury, as the court below thought proper to sustain it, this court will not disturb it, unless it manifestly appear to us, that it was unwarranted by the proof. The rule on this subject has been so often stated, that it need not be again repeated.
We may observe, however, that there is no proof of an ex *478 press ratification; the proof from which a ratification may be inferred is but feeble. The delay to make the election, for the time and under the circumstances stated, seems to us to be the strongest ground upon which to rest the verdict. These issues, however, were so exclusively appropriate for the decision of'the jury upon the facts submitted to them, that we do not consider ourselves authorized by the well established practice of this court, in reference to new trials, to disturb the verdict.
Let the judgment be affirmed.